[No. 4501.   Decided March 30, 1903.]

NATIONAL BANK OF COMMERCE, *Respondent,* v. CARY W. COOK, *Appellant.*

APPEAL — INSUFFICIENCY OF EVIDENCE.

The findings of the trial court will not be disturbed in a case triable *de novo* on appeal, when the testimony is conflicting, without preponderating strongly in favor of the defendant, since weight should be given to the judgment of the court who saw and heard the witnesses testify.

Appeal from Superior Court, Pierce County.—Hon. THAD HUSTON, Judge. Affirmed.

*Hudson & Holt, J. M. Ashton* and *W. L. Sachse,* for appellant.

*F. S. Blattner* and *Harvey L. Johnson,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—Appellant and one John B. Hardy entered into a contract by the terms of which Hardy agreed to furnish and install in the steamboat "Mainlander," its boilers,

engines, and appliances, at an agreed price. The contract contained a guaranty by Hardy to the following effect:

"The party of the second part hereby stipulates and guarantees that all of the machinery, boilers, material and equipment so furnished shall be of first class material and workmanship in every respect, and be capable of propelling the said steamboat or vessel at a speed of fourteen statute miles per hour on a consumption of not more than two pounds of Franklin coal per indicated horse power per hour, and further covenants and guarantees that the machinery shall be capable of propelling the vessel when loaded to a draught of eleven feet at a speed of fourteen statute miles per hour on a consumption of 1,300 pounds Franklin coal per hour. This guarantee to extend for a period of six months from the date of the completion, and the vessel during said period is to be used only on regular runs between Tacoma, Washington, and Vancouver, British Columbia."

The contract is a long one, and many mutual guaranties are incorporated in it, but the main controversy is over the guaranty just above quoted. The boilers to be furnished under the contract were two gunboat boilers, the price of the same being $12,350. After the execution of the contract the terms were changed, to the effect that Seabury water tube boilers were substituted; the latter boilers costing $10,000 apiece. The steamer was completed and turned over to the possession of the party of the first part (the appellant here); the amount of the contract price having been paid, with the exception of $5,172.80, which amount was assigned by Hardy to the plaintiff, respondent here. The written assignment was made with the knowledge and acceptance of the appellant, and upon the refusal to pay the same this action was brought.

The court, among other findings, made the following:

"That the said John B. Hardy fully performed all the conditions of the aforesaid written contract on his part to be performed, and there is due and unpaid from the defendant under said contract the sum of $5,172.80, with interest thereon from April 15, 1901."

Judgment was entered for that amount, and a lien established upon the ship. Outside of the many questions which are discussed by counsel in their briefs in relation to the construction of the contract, we think the testimony supports the finding of the court in the particular above quoted, which goes to the merits of the case. On every material issue the testimony was conflicting. It seems from the testimony that, so far as the principal trips of the ship are concerned, if all the coal that was used should be charged up to such trips, more tons of coal were consumed than was provided for in the guaranty. But there is undisputed testimony that a great deal of coal was consumed while the ship was lying idle under banked fires. The testimony is conflicting as to the amount thus consumed, ranging from two to six or seven tons per day. If this amount be deducted from the amount consumed during the actual working hours of the steamer, the consumption would probably be within the guaranty. In addition to this, it appears that there were operated an electric light plant, sanitary pumping plant, and a steam heating plant, all of which consumed coal which, it is testified, would in the aggregate amount to twenty-five per cent. of the whole amount of coal consumed. It is the contention of the respondent that the amount of coal consumed by these different plants was not included in the warranty; while the appellant contends that a reasonable construction of the contract would include it. Upon this subject, again, the testimony is conflicting, as it is on the question of defects in the machinery which was made and supplied by Hardy.

It is also in evidence by disinterested witnesses that, after the completion of the boat and after the six months' time for trial had expired, the appellant recommended Hardy to other parties as a skillful and honest contractor, stating that he had done work for him (referring to the work in controversy) and that it was well and satisfactorily done. Hardy also testifies that the appellant told him about the middle of March that everything was satisfactory; that he asked appellant if there was anything that he wanted him to do to the boat so that she would be accepted on the 15th of April, in order that he get his money then without any question, and appellant said that he did not know of anything, and asked Hardy if he knew of anything. The reply was that he knew of nothing excepting a small bracket on the reversing gear, which he was then repairing. It appears, also, that an accident had happened to the boat at Vancouver, knocking off one of the blades of the propeller; that she was then beached, and the opposite blade was then knocked off, and the boat was run for some time with two blades instead of four, which, it is testified, would require more coal. Of course, much of this testimony was contradicted by the appellant. But the possession of the boat was delivered to the appellant, and, while it is true that there was a mutual agreement as to who should be the engineer to run the boat during the six-months period of probation, the possession was actually in the appellant; and it does not appear that any objection was made during the six months, but it was only after that time, and a short time before this action was commenced, that claims of delinquency were made. While, as we have before indicated, the testimony is conflicting, and while the case is tried here *de novo*, some weight will be given to the judgment of the trial court, who saw the witnesses on the

stand and heard them testify; and, in consideration of the whole record, we are of the opinion that the findings of the court were justified.

The assignment was sufficient to warrant the judgment, and it will therefore be affirmed.

FULLERTON, C. J., and MOUNT, HADLEY and ANDERS, JJ., concur.